

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

ENTERED
05/22/2012

| | | |
|---|---|---|
| IN RE: | § | Case No. 12-31011 |
| THE JARVIS ADVENTURE BUILDING, LLC, | § § § | Chapter 11 |
| Debtor(s). | § | Judge Isgur |

### MEMORANDUM OPINION

Andrew Haut engaged in professional misconduct in the filing of the bankruptcy petitions in two related cases. His misconduct is not excused and the Court recommends disciplinary action by the United States District Court for the Southern District of Texas. The misconduct will also be reported to the State Bar of Texas.

### Factual Background

Jarvis Adventure Building, LLC and Jarvis Adventure, Inc. filed bankruptcy petitions on December 5, 2011 in cases 11-40231 and 11-40236, respectively. John D. Jarvis, the Debtors' principal, was a joint debtor in both cases. On January 5, 2012, both cases were dismissed by The Honorable Karen K. Brown with prejudice to refiling for 60 days. (Case No. 11-40231, ECF No. 21; Case No. 11-40236, ECF No. 22). The 2011 cases were filed without an attorney, one reason among many for their dismissal.[1]

After dismissal of the 2011 cases, Jarvis hired Andrew Haut as counsel. On February 6, 2012, Haut knowingly filed new bankruptcy petitions in direct violation of Judge Brown's order. (Case Nos. 12-31005 & 12-31011). The day after filing the petitions, the Debtors moved to dismiss the cases. (Case No. 12-31005, ECF No. 3; Case No. 12-31011, ECF No. 4). The

---

[1] Entities may only file bankruptcy cases through attorneys.

motions were denied for failure to set forth cause for dismissal. (ECF No. 5).[2] In addition, the Court set a status conference for February 13, 2012 and required Debtors' principal and Debtors' counsel to show cause why they should not be sanctioned for a bad faith filing in direct violation of Judge Brown's order.[3]

Prior to the scheduled hearing, Haut filed a "Certificate of Good Cause" in an attempt to demonstrate good faith. (ECF No. 10). Although apparently sincere, the "Certificate of Good Cause" underscored Haut's failure to grasp the severity of his actions.[4]

Haut admitted intentionally violating Judge Brown's order. (ECF No. 10 at 2). Haut nevertheless stated that he believed the filings were in "good faith" because: (i) Haut considered Judge Brown's order "invalid";[5] (ii) the creditors would not suffer irrevocable harm because the Debtors could be required to pay damages; and (iii) Haut "balanced the risk and rewards as [he] saw them" and decided it was in his client's economic interest to violate the court order.[6] (ECF No. 10 at 2-3).

---

[2] Case No. 12-31011 was transferred to the undersigned judge by agreement of the judges. (ECF No. 5). The cases followed identical tracts, with motions applicable to both cases usually filed on both dockets. Future citations will only reference the docket for Case No. 12-31011.

[3] The cases were filed one day prior to the February foreclosure date, circumstantial evidence of bad faith.

[4] Initially the Court also indicated concern that the Certificate of Good Cause violated the attorney-client privilege by recounting confidential conversations between Jarvis and Haut. There is an applicable exception to the general rule which allows a lawyer to reveal this confidential information if necessary as a defense to a disciplinary complaint. TEX. DISCIPL. R. PROF. CONDUCT 1.05(c)(6).

[5] Haut uses the word "invalid" to describe Judge Brown's order. (ECF No. 10 at 3) ("I believed in good faith that the Order prohibiting re-filing was invalid and inequitable."). It is probably more accurate to say that Haut believed Judge Brown's order to be legally incorrect, not invalid or void. In the same pleading Haut later acknowledges the difference and his mistake. (ECF No. 10 at 12) ("I have come to believe that my reasoning was flawed. There appears to be one standard for challenging/appealing an order that has been obeyed, and a much higher standard to *disregard* one . . . . I inadvertently made a *huge* mistake.") (emphasis in original).

[6] "Not to re-file meant that Jarvis' home would be foreclosed upon and auctioned off for a fraction of its true value. On the other hand, re-filing the cases in violation of the Order would probably stop the foreclosure (avoiding a loss estimated to be no less than $100,000) but subject Jarvis to sanctions likely to be much less costly, and then, only if

Haut brazenly argued that his conduct actually served to further the integrity of the system by allowing honest litigants access to the courts and a full airing of issues, while also furthering the bankruptcy goal of providing an orderly alternative to creditors racing to dismantle a debtor. (ECF No. 10 at 3).

The filings were the audacious result of misguided reasoning. It is not clear how Haut successfully deceived himself into believing that he was acting for the benefit of creditors or that his actions would further the integrity of the bankruptcy system. The Court does find, however, that Haut honestly believed these things to be true.

The "Certificate of Good Cause" revealed some mitigating facts. First, Haut was candid and forthcoming.[7] While Haut's actions must be condemned, it cannot be said that he acted surreptitiously or attempted to commit a fraud upon the Court. Second, Haut filed the motions to dismiss the new cases only after creditors threatened sanctions. That is, while the cases were filed to stop the impending foreclosure, Haut did not plan to file and then immediately dismiss.[8] Finally, Haut identified Judge Brown's reasons for dismissing the prior cases and attempted to fix all deficiencies before refiling.[9]

---

my arguments against the validity of the order failed and I could not persuade the court that the relative equities among the litigants favored Jarvis." (ECF No. 10 at 4 n.3).

[7] Haut disclosed the prior bankruptcies when he filed the new petitions. (ECF No. 1). Haut contacted creditors the morning after filing to advise them of the situation. (ECF No. 10 at 7). It would have been best to attach a document to the new petitions indicating these filings violated Judge Brown's order. Given all attendant circumstances, Haut's statement that he knew he would have to explain his conduct to the Court (implying he was up-front about the situation) rings true. (ECF No. 10 at 3).

[8] An additional supporting fact is that it would have been much less expensive for Haut to file chapter 7 cases instead of chapter 11 cases if the plan was to file to avoid foreclosure and then immediately dismiss.

[9] Haut found the prior cases were dismissed because of: (i) representation of a corporate entity by a nonattorney; (ii) failure to provide proof of insurance of secured assets; and (iii) failure to file a creditor matrix. (ECF No. 10 at 6). Although Haut incorrectly believed a Creditor Mailing List sufficed for a valid creditor matrix, it appears the other deficiencies were remedied prior to the new filings. (*Id.*). In addition, Haut made Jarvis pay the U.S. Trustee

At the show cause hearing on February 13, 2012, the Court advised Haut to retain counsel and stressed the gravity of the situation. A further hearing was scheduled for March 13, 2012.

That Haut's transgressions involved bankruptcy filings is an aggravating factor. This is due to the unique nature of a bankruptcy petition. The filing of a bankruptcy petition is a self-invoking injunction. The protections of the automatic stay are instantly procured merely upon filing a petition. The self-invoking nature of the remedy is why there is no 21-day safe harbor for inappropriate bankruptcy petitions. FED. R. BANKR. P. 9011; *see also In re Tagt, L.P.*, 393 B.R. 143, 153-54 (Bankr. S.D. Tex. 2006), *aff'd sub nom. In re Yorkshire, LLC*, 540 F.3d 328 (5th Cir. 2008). Before the creditors could argue their position to the Court, Haut had already procured for his client the desired benefits of a bankruptcy filing—here, the automatic stay that prevented foreclosure in February 2012.

At the disciplinary proceeding, Haut was represented by counsel. University of Houston Law School Professor Robert Schuwerk testified as an expert on ethical issues. Haut testified at the end of the hearing. Haut's testimony indicated a failure to comprehend how fundamentally important it is to the adversarial system that lawyers abide by court orders. Lawyers may not violate court orders based on their belief in the inequity of an order or whether the order was correctly issued.

All parties had until March 27, 2012 to submit additional briefing on the matter. No supplemental briefs were filed.

---

fees still owing for the prior cases. (*Id.*). Payment of the outstanding U.S. Trustee fees was required by the prior orders of dismissal. (Case No. 11-40231, ECF No. 21; Case No. 11-40236, ECF No. 22).

## Analysis

**Texas Disciplinary Rules of Professional Conduct**

Rule 3.04 ("Fairness in Adjudicatory Proceedings") states:

> A lawyer shall not . . . knowingly disobey, or advise the client to disobey, an obligation under the standing rules of or a ruling by a tribunal except for an open refusal based either on an assertion that no valid obligation exists or on the client's willingness to accept any sanctions arising from such disobedience.

TEX. DISCIPL. R. PROF'L CONDUCT 3.04(d). Lawyers must not knowingly disobey court orders unless it is by an open refusal premised on one of two exceptions: (i) an assertion that no valid obligation exists; or (ii) the client's willingness to accept any sanctions arising from such disobedience.[10]

The first exception is not applicable. Even if Judge Brown erred by dismissing the prior bankruptcy cases with prejudice to refiling for 60 days,[11] Haut still had a valid obligation to abide by the order.[12] The proper and ethical way to challenge the legal validity of the order, of course, is to appeal or request the court to reconsider its ruling.

The second exception is also inapplicable. The second exception means "that a lawyer may acquiesce in a client's position that the sanctions arising from noncompliance are preferable

---

[10] An alternate interpretation of this rule would allow a lawyer to knowingly disobey a court order only when the lawyer believes no valid obligation exists. That is, under this interpretation, a lawyer would not be allowed to disobey a court order merely because the client is willing to accept any resulting sanctions. It is only the client who would be allowed to disobey a court order if he were willing to accept any resulting sanctions. The Court believes the latter to be the more ethically justifiable interpretation. Nevertheless, this question need not be decided because the exception is inapplicable no matter the interpretation.

[11] Although this Court does not explicitly review Judge Brown's order, the Court finds Haut's argument as to the invalidity of the order lacks merit.

[12] At the disciplinary hearing, Haut's counsel referenced *In re Frieouf,* 938 F.2d 1099 (10th Cir. 1991). In *Frieouf,* the Tenth Circuit held that § 349(a) only allows a bankruptcy court to dismiss with prejudice to refiling those cases which meet the requirements of § 109(g). If *Frieouf* were valid law in the Fifth Circuit (a doubtful proposition), Judge Brown's order would have been in error. From Haut's Certificate of Good Cause, it does not appear that *Frieouf* played any role in Haut's decision. Furthermore, *Frieouf* doesn't say that such an order is void, merely erroneous.

to the costs of compliance." TEX. DISCIPL. R. PROF'L CONDUCT 3.04(d) cmt. 7. "This situation can arise in criminal cases, for example, where the court orders disclosure of the identity of an informant to the defendant and the government decides that it would prefer to allow the case to be dismissed rather than to make that disclosure." TEX. DISCIPL. R. PROF'L CONDUCT 3.04(d) cmt. 7.

Haut did not acquiesce in Jarvis's decision. Haut did not file reluctantly after Jarvis decided on his own that sanctions arising from noncompliance were preferable to the costs of compliance. Haut "balanced the risks and rewards as [he] saw fit." (ECF No. 10 at 3). Haut surveyed the situation and concluded it would be better for his client economically to file new bankruptcy petitions in violation of Judge Brown's order. Haut decided he could file the petitions after meeting certain conditions, such as requiring Jarvis to pay the outstanding U.S. Trustee fees from the prior case. Haut admits it was he who determined the costs outweighed the benefits, not the other way around. Finally, at the disciplinary hearing, Haut's counsel acknowledged the conduct constituted an ethical violation.[13]

Moreover, even if this second exception were applicable, Haut violated the United States District Court for the Southern District of Texas's Rules of Discipline. *FDIC v. United States Fire Ins. Co.*, 50 F.3d 1304, 1312 (5th Cir. 1995) (citing 28 U.S.C. § 2071 as statutory authority for this power) ("[D]istrict courts such as the Northern District of Texas may adopt rules for the conduct of attorneys.").

In the Southern District, "the minimum standard of practice [is] the Texas Disciplinary Rules of Professional Conduct." USDC/SDTX Local Rules, Appx. A, Rule 1(A) (2007).

---

[13] "Do I think that's an ethical lapse? Yeah. . . . [I]t was intentional and he's taking responsibility. I mean he's not hiding behind the fact, oh, I didn't know, I didn't see the order." (ECF No. 31 at 10-11).

Although "[v]iolation of the Texas Disciplinary Rules of Professional Conduct shall be grounds for disciplinary action, . . . the court is not limited by that code." USDC/SDTX Local Rules, Appx. A, Rule 1(B) (2007). Texas's second exception to Rule 3.04(d) has no counterpart in the ABA's Model Rules of Professional Conduct. Robert P. Schuwerk & Lillian B. Hardwick, HANDBOOK OF TEXAS LAWYER AND JUDICIAL ETHICS 61 (West 2012).

This Court's refusal to recognize this second exception is consistent with the Southern District's Rules of Discipline, which indicate that courts are not limited by the Texas Disciplinary Rules of Professional Conduct. The Court will not countenance intentional disobedience of its orders by lawyers whose clients decide the costs of compliance outweigh the costs of sanctions. Indeed, the Court will ensure that such calculations are incorrect.

Having established the misconduct, the Court must determine: (i) whether it has a duty to report Haut's misconduct; and, (ii) if it does not have a duty to report, whether it should, in its discretion, report Haut's misconduct.

**Duty to Report[14]**

The Court has a duty to report Haut's misconduct.

Under certain situations, a lawyer must report misconduct. The Texas Disciplinary Rules of Professional Conduct state:

> [A] lawyer having knowledge that another lawyer has committed a violation of applicable rules of professional conduct that raises a substantial question as to that lawyers honesty, trustworthiness or fitness

---

[14] The local rules of United States District Court for the Southern District of Texas contain separate procedures for reporting professional misconduct. The local rules state that the Texas Disciplinary Rules of Professional Conduct are the minimum standards of practice. USDC/SDTX Local Rules, Appx. A, Rule 1(A) (2007). The local rules do not separately describe which professional misconduct violations must be reported. Instead, it appears reporting is entirely discretionary. USDC/SDTX Local Rules, Appx. A, Rule 5(A) (2007). That is, of course, unless reporting is required under the Texas Disciplinary Rules of Professional Conduct, which the Southern District uses as a minimum standard.

as a lawyer in other respects, shall inform the appropriate disciplinary authority.

TEX. DISCIPL. R. PROF'L CONDUCT 8.03(a).

In his ethics treatise, Professor Schuwerk enumerates categories of misconduct[15] found to be sufficiently egregious as to raise a substantial question regarding the lawyer's honesty, trustworthiness or fitness as a lawyer in other respects:

> Lying and stealing are by far the most commonly reported instances of such misconduct, but there are a scattering of opinions stating that other behavior, such as dishonest advertising, undertaking or continuing representations involving clear conflicts of interest, charging an unreasonable fee, improperly disbursing settlement funds, making an improper settlement offer, and violating the lawyer's obligation of confidentiality to a former client are within that standard.

Robert P. Schuwerk & Lillian B. Hardwick, HANDBOOK OF TEXAS LAWYER AND JUDICIAL ETHICS 457-48 (West 2010).

The Texas Commission on Professional Ethics addressed the duty to report misconduct. Tex. Comm. on Prof'l Ethics, Formal Op. 534 (2000). In Opinion 534, Attorney A notified Attorney B that the latter's Qualified Domestic Relations Order ("QDRO") contained material defects. Attorney B refused to amend the QDRO, thereby jeopardizing his client's interests. The Commission did not find that Attorney A had an absolute duty to report the misconduct.

Most of the examples of misconduct outlined by Schuwerk are intentional and deceitful actions by lawyers intended to benefit themselves. The situation described in Opinion 534 is an intentional inaction which, while not necessarily deceitful, shows a disregard for a client's welfare. The present situation is of a different character.

---

[15] These opinions are from jurisdictions other than Texas. Professor Schuwerk argues they may nevertheless provide suitable guidance in Texas. Robert P. Schuwerk & Lillian B. Hardwick, HANDBOOK OF TEXAS LAWYER AND JUDICIAL ETHICS 457 (West 2010).

As set forth below, despite these distinctions, Haut's actions pose a substantial question as to his honesty, trustworthiness, or fitness as a lawyer.

**Honesty**

Haut's actions do not pose a substantial question as to his honesty.

To be honest is to be free from fraud or deception. WEBSTER'S NINTH NEW COLLEGIATE DICTIONARY 579 (1990). Honesty implies a refusal to lie, steal, or deceive in any way. (*Id.*).

Although Haut's conduct must be condemned, it simply cannot be said that Haut behaved in a fraudulent or deceptive manner. (*See* note 7 & accompanying text). Haut did not lie or steal. Haut personally stood to gain very little for his actions. (ECF No. 10 at 4). Haut's "Certificate of Good Cause" honestly laid out the reasoning behind his actions, for better or for worse. Haut never attempted to hide the fact that he intentionally violated Judge Brown's order.

**Trustworthiness**

Haut's actions pose a substantial question as to his trustworthiness.

A trustworthy person is a dependable person—someone worthy of confidence. WEBSTER'S NINTH NEW COLLEGIATE DICTIONARY 1268 (1990). There are at least two relevant aspects to trustworthiness: (i) clients must be able to trust that a lawyer will faithfully and zealously represent them; and (ii) the courts and other lawyers must be able to trust that a lawyer, while zealously representing his client, will behave ethically.

There appears to be no question raised by these facts as to whether a client may trust Haut to faithfully and zealously represent them. This is not a situation similar to Opinion 534, when an attorney refused to amend a pleading after being advised of its deficiency and thereby jeopardized the client's interest.

The second aspect is where the problem lies. Haut's filing was unethical. Haut's future filings will be viewed with a jaundiced eye. Neither judges who issue orders nor opposing litigants who rely upon them will be assured of Haut's compliance.

Haut's decision to file the bankruptcy petitions in direct violation of Judge Brown's order raises a substantial question as to whether others may trust that future filings by Haut do not violate court orders and are otherwise ethical.

**Fitness as a Lawyer**

Haut's actions do not bring into question his fitness as a lawyer given the limited definition of "fitness" stated in the rules.[16]

"The term fitness has the meanings ascribed to it in the Terminology provisions of these rules." TEX. DISCIPL. R. PROF'L CONDUCT 8.03(a) cmt. 4. The Terminology provisions define "fitness" as follows:

> Fitness denotes those qualities of physical, mental and psychological health that enable a person to discharge a lawyer's responsibilities to clients in conformity with the Texas Disciplinary Rules of Professional Conduct. Normally a lack of fitness is indicated most clearly by a persistent inability to discharge, or unreliability in carrying out, significant obligations.

TEX. DISCIPL. R. PROF'L CONDUCT PMBL.

There is no indication Haut has any physical, mental, or psychological health ailments that prevent him from conforming with the Texas Disciplinary Rules of Professional Conduct. The facts of this case do not demonstrate a persistent inability to discharge, or unreliability in carrying out, significant obligations.

---

[16] Haut's failure to grasp how fundamentally important it is that lawyers abide by court orders does, under this Court's definition, pose questions as to his "fitness" as a lawyer. However, the Court will not substitute its own definition for that contained in the Rules.

**Discretionary Reporting**

Even absent a duty to report, the Court would report Haut's misconduct. The most important factors weigh in favor of filing a report, especially concern about repeat conduct.

Rule 8.03 defines when a lawyer must report professional misconduct. "It is not intended to, nor does it, limit those actual or suspected violations that a lawyer may report to an appropriate disciplinary authority." TEX. DISCIPL. R. PROF'L. CONDUCT 8.03(a) cmt. 3.

Professor Schuwerk testified that, when considering disciplinary sanctions, courts should consider the lawyer's experience, what the lawyer hoped to achieve, whether the lawyer appears contrite, and whether a less drastic sanction would both protect the dignity of the court and prevent repeat conduct. (ECF No. 31 at 17-18).[17]

**Experience**

While Haut is an inexperienced lawyer, inexperience is a poor excuse for this type of misconduct. This is not a nuanced ethical dilemma. It is as basic as "don't steal from your client." Haut's counsel repeatedly stressed that Haut does not often practice in bankruptcy court. Haut's conduct is not a bankruptcy issue, even though the violation took place in bankruptcy court. Bankruptcy inexperience might excuse procedural missteps, not intentional violations of court orders.

Nevertheless, there is one aspect in which Haut's bankruptcy inexperience might mitigate his actions. This is the fact that a bankruptcy filing is a self-invoking injunction. The relief sought (here, the avoidance of foreclosure by invocation of the automatic stay) is gained, at least temporarily, without the involvement of a court. While Haut obviously knew the filing of the

---

[17] When Professor Schuwerk listed these categories he was speaking of factors to be considered when determining whether Haut's actions posed a substantial question as to his honesty, trustworthiness, or fitness as a lawyer. These factors are relevant to a discretionary reporting duty as well.

11 / 14

petition would avoid the foreclosure, Haut's inexperience might have caused him to overlook how this increased the egregious nature of his actions.

**What the Lawyer Hoped To Achieve**

Initial circumstantial evidence cast this case in a very negative light for reasons other than the intentional filing in violation of Judge Brown's order. There was the fact that the case was filed the eve of the February foreclosure date. Additionally, the Debtors moved to dismiss the day after filing, only increasing concern that the cases were filed solely for the purpose of avoiding foreclosure.

Haut's "Certificate of Good Cause" revealed some mitigating factors which, while not excusing Haut's misconduct, certainly put what he hoped to achieve in a more favorable light.

Desire to stop an impending foreclosure precipitated the bankruptcy filings, but this is often the case. Several factors indicate Haut intended to pursue these bankruptcy cases—not merely file to avoid foreclosure and then dismiss. Haut identified Judge Brown's reasons for dismissing the prior cases and attempted to fix all deficiencies prior to refiling. (*See* note 9 and accompanying text). The filings were chapter 11 cases instead of chapter 7 cases, adding an unnecessary expense for the client if immediate dismissal had been contemplated. Finally, the motions to dismiss were filed as a result of objections from creditors to the new bankruptcy filings. (ECF No. 10 at 8).

Opposite these mitigating factors is the aggravating factor that a bankruptcy filing is self-invoked relief. Haut sought, and successfully procured, relief for his client without court involvement while at the same time violating a court order.

**Contrition**

As the Court stated at the disciplinary hearing, there is no question that Haut is contrite and sincerely regrets his actions. (ECF No. 31 at 19) ("I do think, by the way, he's very sorry that he did this. I'm convinced of that. And that's meaningful.").

**Protecting the Dignity of the Court**

Professor Schuwerk testified that, in this situation, there is no one sanction absolutely necessary to protect the dignity of the Court. (ECF No. 31 at 18). Either a misconduct report or required ethics courses[18] might be sufficient. The ultimate sanction necessary will be a function of the attendant circumstances and "[the Court's] assessment of Mr. Haut and [its] assessment of the efficacy of whatever alternative measures [are proposed]." (ECF No. 31 at 18).

Due to Mr. Haut's failure to grasp the fundamental importance of the precept that lawyers must comply with court orders, a misconduct report is necessary to protect the dignity of the Court.

**Preventing Repeat Conduct**

Haut's personal testimony at the hearing did not help. Haut initially stated that he would never repeat this mistake. Haut's further testimony cast doubt on this statement.

Haut said he previously believed that if he acted honestly and with full disclosure, his actions would always comply with the rules. Haut argued the mistake resulted because the rules

---

[18] On May 16, 2012, Haut filed a report with the Court stating that he had attended 13 ethics classes at the University of Houston.

13 / 14

are "more nuance[d] than that." (ECF No. 31 at 47). Haut immediately regretted his use of the word nuanced and retracted it.[19]

Haut explained that another reason he would not again commit such a violation is because there was another way to procure the desired result—seek immediate relief from Judge Brown in the form of a motion for reconsideration. (ECF No. 10 at 49-50). The implication of this statement is: "I won't intentionally violate an order in this situation again because it isn't necessary."

These statements were troubling. This is not a nuanced ethical issue. A lawyer's obligation to comply with court orders is a precept that it is necessary for the adversarial system to function properly. Lawyers, acting in good faith on behalf of adverse clients, come before an independent judiciary for a decision. The decisions must be followed.

## Conclusion

The Court will report Haut's misconduct to the State Bar of Texas and recommend disciplinary action by the United States District Court for the Southern District of Texas. Although the Court believes that disciplinary action is warranted by both bodies, the Court also recommends that the mitigating factors set forth above minimize the sanctions that are imposed.

SIGNED **May 22, 2012.**

Marvin Isgur
UNITED STATES BANKRUPTCY JUDGE

---

[19] "My short-handing of the rules to, you know, honesty and full disclosure was my mistake because I blew that nuance. And obviously, it's not a nuance, it's very important, but that shows you how wrong my short-handing with the rules were in my brain." (ECF No. 31 at 49).